Case No. 15-1190 et al. Rusco Tug & Barge, Inc. Petitioner v. National Labor Relations Board Mr. Goran for the petitioner, Mr. Hickson for the respondent, and Mr. Coppes for the intervener. Michael Goran, Petitioner The second issue arises only if this Court disagrees with us on the first issue. We contend that the Board acted contrary to law when it refused to permit Brusco to present evidence of changes to the status and duties of mates caused by evolving and changing Coast Guard regulations and other circumstances which arose commencing in 2010. On this issue, we seek a remand of this case for an unfair labor practice hearing at which this additional evidence can be submitted. Since you raised that question, let me just ask you. The intervener's brief in a footnote, 8, which you didn't respond to, says they say it doesn't make any difference what happened in 2010. The only question is whether these mates were supervisors at the time of the election in 1999. That's the question. And that if anything changed since then, the proper remedy for you is, if the mates have in fact become supervisors since then, that the proper remedy is a petition to clarify the bargaining unit. What's your answer to that? I would agree with that if, in this case, the changes postdated a final decision in the representation hearing. But the question is, what was the situation in 1999? That was the issue. The factual question was, were they supervisors then? It doesn't make any difference when the board ultimately decided that question. Isn't that right? Well, Your Honor, no, I don't agree with that because under this court's assessment of the exceptions to the no relitigation rule, this court has ruled that in the unfair labor practice hearing, additional evidence that's evolved since the certification can be brought up. And here we have 15 years of delay. But Mr. Gurney, that's additional evidence going to the facts at issue, which are the status of the unit at the time. Right. So that, yes, the later evidence can be brought into a pending case. But the case is about, and the board made the determination, about the unit as of a particular historical moment. That can't be shifted to a later moment. We don't have a finding or evidence or anything on the later moment. Your Honor, again, I would direct your attention to the Pace University case from this court in which Judge Rogers offered the opinion. And it states in that decision that where a new legal argument is based on after arising or after discovered facts, that can be raised in the defense to the unfair labor practice complaint. And I think, really, in this case, it would really undercut the exception to the no relitigation rule that's been identified by this court to tell us that after 15 years, after all these changes in Coast Guard regulations, which really do impact the status of mates and the responsible direction that they afford to the crew people on the vessels, that that should just not be considered. It should just be swept under the rug. No, no. But, no, the intervener says there's a procedure for considering this. We move to modify the unit on the grounds that they're no longer supervisors. Your Honor, what I'm saying – You didn't answer this in your brief. Right? You didn't say anything about it. I assumed you were conceding it since you hadn't responded. No, Your Honor. Not true? No, we're not conceding that point because, again, at the time that we submitted this evidence, the representation hearing was ongoing and had not been finalized. Why don't you just answer the question I asked you, which is, specifically, they say in their brief the proper procedure is to move to modify the bargaining unit. And I would disagree with that, Your Honor. I know you disagree with it, but why? Because at the time that we submitted the new evidence, there had not been a final decision in the representation case, and we had the right to ask the Board to consider newly discovered evidence in the representation case. I would agree that if the representation case had been finally decided and there was no further appeal from that, that the proper approach might be a unit clarification. A unit clarification doesn't help us here because all it would mean is that the mates would leave the bargaining unit. We would still have the bargaining obligation. So to follow up on that footnote would basically be to deprive us of our defense, the exception to the no relitigation rule. So on the first issue about the 2001 record, this case, of course, was before the court in 2001, and the court remanded the matter. They were a lot younger then. Right. I remember that case. Yes, they knew after the decision, Your Honor. Right. And the mates were a lot younger. Yes, they were. In fact, none of them were really working for the employer anymore. I'm the only one left. Is that it? Where's the... So, Your Honor, the court remanded to the Board for the Board to explain its inconsistencies between its prior decisions regarding mates and the current decision. And it's our position that the Board really hasn't done a very good job or a very convincing job of distinguishing its prior precedents. It comes up with two explanations. One explanation is that the prior precedents were pre-Oakwood cases. And two, the second explanation is that some of those prior cases involves larger crews than the current case. And we would submit that neither reason is compelling. It's not compelling to say simply that a case is older and that there has been a new case. The Oakwood decision didn't really change anything. It clarified the statute. And it's our position that the pre-2001 cases that the court was concerned with distinguishing have not been distinguished adequately. And that because of that, the current decision of the Board is inadequately reasoned. Let me ask you a couple of questions, though. The Board's position basically is we're dealing most of the time with a four-member crew. And everybody has a different title. Everybody has a different job. And it's always dangerous to rely on personal experience. But if you're a crew on a sailing, everybody knows what to do. And when the captain's asleep, if anything out of the ordinary, you wake him up. It's not as though you have two captains. They don't make the same amount of money. Well, Your Honor, the evidence is that since this case was last before the court, the evolving nature of the business has led to the fact that most of the mates have the same licensure as the captain. But we're back at the time. I mean, we can't. You want to move this case forward, and I understand that. But I don't think you've persuaded me, at least, that you don't have a remedy to the point you're making that the change in the Coast Guard licensure has made the mates, you know, sort of a different category of being than they used to be. And earlier, when the Board invited you to introduce additional evidence, you said no. And I know your explanation is, well, that was back in 2006. We're talking about the Coast Guard in 2010. But the point is you had thin evidence to counter that at the time, and you could have put more in. And the Board said, well, you never gave us any precise examples. You made these broad statements. So isn't that what we're dealing with? And the Board could reasonably say we're not going to reopen this as though this is an entirely new case where everybody has changed roles. Well, again, Your Honor, I would ask you to look closely at the Pace University case because, again, in that case, it says that newly discovered and new evidence can be considered in the unfair labor practice proceedings. And isn't that about who was treated as an adjunct and whether the adjuncts who were eligible were treated properly at the time of the election that's undisclosed? That's right. Not later arising facts or later occurring facts. It's later arising evidence about the initial time period, no? Well, Your Honor, I think the facts may have been that way in that case, but the description of the exception to the no relitigation rule, I think, is the important part to look at. I think not. And you know that as a lawyer that you have to look at what they're talking about when they're talking about a later time. The evidence arises at a later time. The reason it's pertinent to the disputed issue is because it's about what actually happened at that earlier disputed time. I mean, it couldn't be otherwise, could it? Because then any time a bargaining unit was held to be legitimate and certified, then an employer could simply change its employment structure and challenge it on that ground. And that is a completely unworkable kind of system, right? You're looking at something as of a fixed period. But that's not what happened here, Your Honor. What happened here is that during a time period when the representation case was still ongoing, there were changes made to the regulatory climate that weren't instituted by BRUSCO. In other words, this isn't a stratagem where some of that case is held. The rule you're proposing, it appears, would allow later events that were relevant to be considered. And I just don't see how that would be workable, whoever initiates those later changes. There's a different procedure for that. Well, Your Honor, again, if you look at the exception to the no relitigation rule, it says that, for instance, changes to the law. So there have been cases where at the time of the certification, the law was a certain way. By the time it gets to the unfair labor practice procedure, the Supreme Court has come out with a new decision or there's a new appellate decision, and the courts apply that new legal regimen to the particular case, even though that didn't exist when the representation hearing was held. So, really, it's very similar here because the Coast Guard is basically saying that mates need to be trained in leadership and direction of their crews. And because of that, BRUSCO changed, to some degree, the way they deal with their mates to make them responsible for that direction. So, really, it's a changing regulatory climate that was completely outside of my client's control, which caused the change in the status and duty of the mates. And also, based on nothing within our control, is the fact that this case has taken 15 years to adjudicate and remand from this court. It took between 14 years, from 2001 to 2015, to get a final decision on this case. And so, I think, if you look at the special circumstances prong... That sounds quite understandably extremely frustrating. It is. And, Your Honor, when you look at the special circumstances prong of the test, I would submit to you there's very little case law as to what special circumstances are in this context. But I would submit this is a special circumstance where we should be permitted to bring this evidence to the attention of the fact finder, not in a unit clarification petition, which means that we still have to bargain with the union, but in an attack on the certification. I understand. You haven't had to do that all these years. All right. So, why don't we hear from the Board? Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court, Michael Hickson for the NLRB. The Board here reasonably found that the company failed to carry its burden of proving that its mates are statutory supervisors under Section 211 of the Act. As the Court knows, there are two types of Section 211 authority at issue in this case, and those are assignment and responsible direction. As for assignment, the company failed to carry its burden because either the duties that it relies upon do not constitute statutory assignment or they do not require the use of independent judgment or both. Most of the duties that the company cites as the mates' purported Section 211 assignment authority amount to nothing more than the mates simply giving the deckhands ad hoc instructions to perform discrete tasks or perhaps choosing the order in which the deckhands perform discrete tasks within their overall assignment. And under the Board's Oakwood standards, which the company does not challenge, that is not Section 211 assignment. The deckhands' overall duties, like participating in making up a tow or docking or assisting in changing the length of a tow line, are pre-assigned. They have those duties from the moment that they are assigned by the port captain to a crew in the deckhand position. So they're charged with fulfilling those duties from the moment that, well, before the moment that they step onto the boat. And so when the mate, in a given occasion, instructs his deckhand to go over there and to place the lines or where to place them, that is simply ad hoc instruction to perform a discrete task and not assignment. And I know you did a little of this in your brief, but can you help us by distinguishing the cases on which BRESCO relies, Local 28 and Bernhardt Brothers, where the Board did treat the equivalent of mates as supervisors? Certainly, Your Honor. In those two cases, the Board found that the mates at issue responsibly directed other members of the crew. Those are distinguishable on the facts, and they're also eclipsed by a change in the law. The way, primarily, that they're distinguishable on the facts is that, as the Board reasonably found here, that in those cases, the mates oversaw meaningfully larger crews. So, for example, the deckhands are really the most pertinent point here. In Local 28 and Bernhardt Brothers, those crews had four deckhands per crew, whereas here, the company, BRESCO, only has normally one deckhand per crew. Why does that make a difference? It matters, Your Honor, because when the mate oversees a larger crew, he exercises a greater degree of discretion in determining who will perform a given task. Why isn't it still the same kind of ad hoc, you know, reactive instruction on discrete tasks? It's not a responsibly direct anymore, so then... Well, Your Honor... Or it is, and so is the mate's duty in this case. No, Your Honor. So the thing is that the, Your Honor, the ad hoc, the question of ad hoc and discrete tasks, that goes to whether it constitutes assignment authority. That's to be distinguished, as the Board made clear in Oakwood, from direction authority. So an ad hoc instruction to perform a discrete task may not amount to assignment under 211, but may amount to direction under 211. But that direction, as this Court has agreed, in cases like 735 Putnam Pike and last month's decision in Allied Aviation, that direction does not amount to supervisory authority unless it is both, unless it both requires the use of independent judgment and also is responsible. The other... And is there evidence of independent judgment and responsibility in those cases that's missing here? Well, Your Honor, I don't recall the analysis on independent judgment, frankly, being very detailed or thorough in those cases, but the change in the law in Oakwood, the Board revised the interpretation of responsibility. And what it found is that in order for direction to be responsible within the meaning of Section 211, the putative supervisor must face the prospect of adverse consequences based on the poor job performance of the directed employee in the directed tasks. Do we employ a new Board interpretation that the Board arrived at after the events in question to conduct that occurred in the earlier time? I know that BRESCO has not disputed that, but I'm a little bit surprised about that. Well, Your Honor, first, as you point out, BRESCO hasn't disputed that, but moreover, when the Board remanded the second time to the Regional Director, that was the day after Oakwood had been issued, the Oakwood Trilogy, and the Board instructed the Regional Director to take further appropriate action, including reopening the record if appropriate. The Regional Director at that time, in light of Oakwood, issued a show cause notice and invited the parties, the union and the company, to show cause why the hearing should be reopened. And neither party took the RD up on that offer. Your Honor, let's see, where should I turn next? I guess in terms of responsible direction, the company, in its brief, remarkably, it fails to specify... Do you want to say something about the later evidence, subsequent evidence? Certainly, Your Honor. Well, the Board acted within its broad discretion in the rulings that it made concerning the company's belated assertions of changed circumstances. I never... What do you think about... Am I wrong when I ask you... You didn't make the same point that the intervener makes. Concerning unit clarification, Your Honor? Yeah. Or did you? Did I miss it? No, Your Honor, I didn't make it. The Board didn't address that point in its decision. No, the point they made was that none of this evidence is relevant to the situation in 1999. Well, Your Honor, I certainly do agree with that point, and I think that the Board made that clear in its June 2015 decision in order. When discussing the special circumstances exception to the no relitigation rule, it pointed out that courts have upheld the principle that changed circumstances arising with certification have been held irrelevant. And we cite a number of Board and court decisions in our brief that support that principle. I'm running out of time here, Your Honors. I guess that unless the Court has other questions for me, which I'm very happy to answer, I would respectfully ask that the Court enforce the Board's order in full. Thank you. Counsel for intervener? And may it please the Court, I'm Jim Kappas for the Masters, Mates, and Pilots. The only issue in this case is the validity of the certification from the 2000 election. The union's status as the exclusive representative was established at that point. In order to defend its refusal to bargain, the company has to establish that that certification was invalid. And they really make almost no effort to do that. In the argument today, they make no effort to do that. There's certainly substantial evidence to support the Board's conclusion that the Mates, the only contested position, were not supervisors at the time of that election. The company spends a lot of time talking about intervening changes in the law and the new evidence. It's all irrelevant. But seeing as how they only raised the change in the law in their reply brief, we didn't get a chance to address that. I'd like to briefly just dispel any confusion on that score. At the time of the hearing in this case, the testimony was that most of the Mates held a Master's license. And the reason for that is that people progress through these different positions. They become licensed Mates, and then they become licensed as a Master, so they can assume the role of Captain of the Vessel. The Captain of the Vessel is an appointment on the Vessel. There has to be a Captain in charge. There has to be a Captain in charge by the company's own policy. There has to be a Captain in charge by the Coast Guard regulations. One single person in charge of the boat. The Mate is not that person. The Mate's responsible for steering the boat while the Captain is off-duty, present on the boat and still in charge. But the Mate is not in charge of the boat and never has been and isn't to this day. So what is it, Mr. Coppock, that you're referring to when you say they have the Master's license, they can assume the role of Captain on the Vessel, but then you say the Coast Guard regulations and company policy say they're not assuming that role, or that means they're looking to... Well, the Coast Guard regulations... So what's in evidence here, and what we've been able to discuss, because they raised the point at the beginning, if you look at Supplemental Appendix 53, they describe the Captain as the Master of the Vessel. Right, I follow that. You just had... You had said something that was slightly confusing to me. You said that most Mates hold a Master's license so they can assume the role of Captain on the Vessel. So they can get... No, so they can get... So eventually they might get a promotion. They can get appointed Captain. You can't get appointed Captain without a Master's license. You mean appointed like they could change jobs? Get the job. Got it. It's a prerequisite to get in the job. And that's why, if you look at Joint Appendix 109, the testimony back in 2000 was that most of the Mates held a Master's license. They would never get to be Captain if they didn't hold a Master's license while they had the role of Mate. But that doesn't mean that because they hold the license, they're the Captain. They're not. They're just the Mate. And it's the Captain who's the Supervisor and the Mate who's not a Supervisor. So all this time the Union has had no ability to bargain? 15, 17 years? No, they've refused to bargain, period. So that was my question, Mr. Copes. I totally get your point that the question is what happened in 1999, whether they were Supervisors then. But we're 18 years later here, and I don't think Brusco is responsible for any of these delays. These are all delays caused either by the boards taking years to decide a case or because of these intervening Supreme Court cases. So here we are, like, 18 years later, and how do we think about that problem? Or is that not a problem? Well, you know, it is a problem. It is? It's a problem that we run into all the time. It could be 3 years in one case, 5 years in another case. It's unfortunately 18 years here. But the truth of the matter is when you've got that much time between the election and when the employer finally starts to bargain, it is a problem. But a solution to the problem is not to say, well, the employer then never has to bargain because they'll just do what they did here. What's the solution? They want you to do everything faster, right? Yeah, I mean, if everything got done faster and more simply and with less... But this one just seems so unusual. Have you ever seen a case quite like this one? I mean, this is a long time. You know, unfortunately, I deal with a lot of cases that have variations. I can't remember. Did you file a brief in the first case too? Pardon me? Did you file a brief in the first case? No, no, we were not in the case. So you were here then with me, huh? I mean, I could have been. I was practicing. I know you were. So I'm wondering where you were back then. Probably attending to some other sad old case. And what's the court has for us? So there's nothing we can do about that. The question was 1999. All these... We just have to keep focused on that question and hope the board does everything faster in the future. I mean, if everything moves faster and if the court keeps it in mind, I suppose, when it's reviewing the board decisions. I mean, all that's going to happen now is that the union and the employer will finally sit down and bargain. And if there have been changes that are relevant to what should be on the contract or who should be in the unit, they can bargain about that. And if these employees don't want to be represented by the union at this point, they have a remedy as well? Yeah, they can. After bargaining has had a reasonable chance to succeed and it's not succeeded to their liking, they can decertify the union. And the union's not going to get anywhere without their support anyway. So it's... There's no danger of that. Thank you. Thank you. Just a few points. I think the danger is that we'll be bargaining for supervisors that will be in the unit with the people that they supervise. And that is a danger of affirmance here. On the issue of the 1999 record as opposed to the changing circumstances, I would point out that... The standard process in these board cases is that they do drag out. And there was a little unusual situation in this case, both because of political refusal to appoint nominees to the board and then the whole problem that the Supreme Court had to address. So these are things beyond this Court's control, obviously, and your control in one sense. But there are remedies available. And meanwhile, the board has simply said, we're not going to relitigate these cases all over again as though nothing happened back in 1999 and 2000. Well, Your Honor, on the issue... What's unreasonable about that? Well, I think just... I mean, the delays here have been astounding, unprecedented. And the fact of the matter is... No, no, but what I'm getting at is the regional director rules, the board rules, the board remands, the regional director rules, the board remands. I mean, that's standard administrative procedure. We had some politics get in so the board couldn't get people that it needed in order to be able to act lawfully. It took time to get that resolved. Then the appointments had to be made. People had to be confirmed. I mean, you know, move slowly. And your client, as opposed to the people who voted for the union, is benefiting. You haven't had to bargain all these years. In that sense. So it's not as though you've been bargaining all these years, sort of wasting your efforts. Well, Your Honor, really the... If I could just go back to this issue of 1999 versus now. When the board first was confronted with our request to offer new evidence, their response was, and this is at Joint Appendix or Department Appendix 407, was that we should have submitted a motion to reopen the record, and then they made the point that the representation hearing was closed because there had been a decision, which was a Noel Canning decision, which was void. But that was their point. They never made the point that the record is frozen as of 1999. They just said that we should have moved to reopen the record more promptly. So I think the court should really focus on the reasons given by the board for their failure to consider our new evidence, not just simply the notion that we're frozen in time in 1999, that's all we can put up. That's never been their position. Then in their additional decisions in 2015, they then came up with the idea, again, that we should have moved to reopen the record while it was open. And one of the dissenting board members said, well, we did try to get in the evidence while the representation hearing was open. So I think that procedurally, we should be allowed to put on this new evidence because of that fact. Also, it's uncontradicted here on the merits of this case that when the mates are in charge of the watch, they run the boat, and they stand in the shoes of the captain. So can I just ask you a question on that? Suppose the evidence had been admitted, all right? That doesn't mean you win, if you understand what I'm getting at. In other words, the board still could have said, ah, yes, we see the Coast Guard has changed its licensing procedures, and consequently some of the duties of the mates have changed. And the board was very careful here to say, on this record, on these facts, we're not saying anything more broadly, et cetera. It could have said, we're just not going to reopen this case and allow you to make a new case based on subsequent events. But, Your Honor, this was, in essence, like a summary judgment motion. And we were asking for the opportunity to be heard on the new evidence that had been developed. I'm just trying to carry through, that if you've got the opportunity, it doesn't necessarily mean that the board would have determined that to have changed anything about 1999. That's what I'm trying to get at. It's true. You know, the business itself has changed  So a lot of things have changed. Your Honor, that's all true, but... And the board has discretion, doesn't it? The board could have said, we're going to hear your evidence and we are going to reconsider this, because, as you point out, there are only two of the 39 employees left, and it's not where the employer has tried to finagle some change of circumstances. It's all beyond your control. Your Honor, what I would point out, the board never said that the evidence that we were positing was irrelevant, nor did it contest the fact that it might have been dispositive if it was considered on the issue. It simply said that we didn't act promptly, and in light of the delays, I think the idea that we didn't act promptly really kind of rings hollow, and I think... So, as you know, we held a lot of board cases in advance during this problem period. Correct. So there's a lot of delay that we see in a lot of cases, but that's not only the type of administrative cases we see with a lot of delay. I mean, these petitions before FERC take forever to get resolved. But, Your Honor, the delays here, many of the years... The first, there was a four-year delay. That had nothing to do with the null canning issue or the appointment issue. The board's own rules say that it's supposed to expedite, to the greatest extent possible, representation hearings, and then there's a four-year delay. Then there's a six-year delay. Then there's more delays because of the null canning. So, again, the evidence was never... The position of the board, and I think this is where I'd like to leave the court, the position of the board has never been that the record is frozen in 1999. The position simply was, we should have made a motion to reopen earlier. Thank you. Thank you.
judges: Rogers, Tatel, Pillard